IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

STEPHEN CRAIG BURNETT,        )
                              )
            Plaintiff,        )
                              )
                              )        CIV-10-257-M
v.                            )
                              )
JUSTIN JONES, et al.,         )
                              )
            Defendants.       )

SUPPLEMENTAL REPORT AND RECOMMENDATION

Plaintiff, a state prisoner appearing *pro se* and *in forma pauperis*, has filed this 42

U.S.C. § 1983 action alleging various violations of his constitutional rights in thirteen

separate claims. Plaintiff, who is serving a life sentence for first degree murder, was in

custody at the Cimarron Correctional Facility ("CCF")[1] at the time the Complaint was filed,

and he is currently in custody at the Davis Correctional Facility ("DCF"). In his Second

Amended Complaint filed May 20, 2010, Plaintiff asserts thirteen grounds for relief against

ten Defendants, including Mr. Jones, the Director of the Oklahoma Department of

Corrections ("DOC"), Ms. Morton, DOC's administrative review authority, and eight CCF

officials. In compliance with the Order directing the filing of a report consistent with

Martinez v. Aaron, 570 F.2d 317 (10th Cir. 1978), Defendants have filed a Special Report.

---

[1] CCF is a private prison operated by Corrections Corporation of America Inc. under a
contract with the Oklahoma Department of Corrections. According to Plaintiff's address change
notice, he was transferred from CCF on September 13, 2010.

(Doc. # 56)("Special Report I"); (Doc. # 59)("Special Report II"). The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).

Defendants Morton and Mr. Jones ("DOC Defendants") have moved to dismiss the action against them pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6) or, alternatively, moved for summary judgment pursuant to Fed. R. Civ. P. 56(b). (Doc. # 61). Plaintiff has responded to this dispositive motion. (Doc. # 80). Defendants Taylor, Choate, Battles, Middleton, Sebenick, Ms. Jones, and Roof ("CCF Defendants") have moved to dismiss the action against them pursuant to 42 U.S.C. § 1997e(a) and Fed. R. Civ. P. 12(b)(6). (Doc. # 57). Plaintiff has responded to this dispositive motion. (Doc. # 76). Plaintiff has filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56 as to his claims against the DOC Defendants. (Doc. # 82). The DOC Defendants have responded to the dispositive motion. (Doc. # 85). Plaintiff has also filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56 concerning his claims against the CCF Defendants. (Doc. # 77). The CCF Defendants have responded to the dispositive motion. (Doc. # 84). For the following reasons, it is recommended that the DOC Defendants' and the CCF Defendants' dispositive motions be granted, that Plaintiff's dispositive motions be denied, that the claims raised in counts 11 and 12 as to all Defendants be dismissed, and the claims raised in count 1 against Defendant Jester be dismissed.

I. Standard of Review

A motion to dismiss may be granted when the plaintiff has "failed to state a claim

upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  To survive a motion to dismiss, a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level." <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007). This review contemplates the assertion of "enough facts to state a claim to relief that is plausible on its face." <u>Id.</u> at 1974.  Thus, "when the allegations in a complaint, however true, could not raise a [plausible] claim of entitlement to relief," the cause of action should be dismissed. <u>Id.</u> at 1966. A *pro se* plaintiff's complaint must be broadly construed under this standard. <u>Erickson v. Pardus</u>, 551 U.S. 89, 94 (2007); <u>Haines v. Kerner</u>, 404 U.S. 519, 520 (1972).  However, the generous construction to be given the *pro se* litigant's allegations "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." <u>Hall v. Bellmon</u>, 935 F.2d 1106, 1110 (10th Cir. 1991).  <u>See</u> <u>Twombly</u>, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.")(quotations and citations omitted); <u>Whitney v. New Mexico</u>, 113 F.3d 1170, 1173-1174 (10th Cir. 1997)(courts "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf"). A court evaluating a Rule 12(b)(6) motion to dismiss may consider the complaint as well as any documents attached to it as exhibits. <u>Hall</u>, 935 F.2d at 1112.

Summary judgment may be granted only where the pleadings and documentary

materials "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). In considering a motion for summary judgment, the court reviews the evidence and inferences drawn from the record in the light most favorable to the nonmoving party. Jiron v. City of Lakewood, 392 F.3d 410, 414 (10th Cir. 2004). A dispute is "genuine" if a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Material facts" are "facts which might affect the outcome of the suit under the governing law." Id. Additionally, if the moving party demonstrates an absence of evidence regarding an issue on which the nonmoving party will bear the burden of proof at trial, the nonmoving party can defeat summary judgment only by designating with evidence outside of the pleadings "specific facts showing that there is a genuine issue for trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).[2]

II. Exhaustion of Administrative Remedies

The CCF Defendants move to dismiss Plaintiff's cause of action on the ground that Plaintiff failed to exhaust available administrative remedies concerning the claims raised in the Second Amended Complaint. The Prison Litigation Reform Act ("PLRA"), enacted in 1996, directs that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other

---

[2]In a prisoner civil rights case such as this one, the plaintiff's complaint is treated as an affidavit if it alleges facts based on the plaintiff's personal knowledge and has been sworn under penalty of perjury. Hall, 935 F.2d at 1111.

correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). "[E]xhaustion requirements are designed to ... give the [institution] a fair and full opportunity to adjudicate their claims" before the plaintiff proceeds to file an action in federal court. Woodford v. Ngo, 548 U.S. 81, 90 (2006). The PLRA's exhaustion requirement applies "to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 524, 532 (2002). Moreover, exhaustion of administrative remedies under the PLRA is required for all inmates seeking relief in federal district court even when the administrative procedure fails to provide a particular type of relief, such as monetary damages. Booth v. Churner, 532 U.S. 731, 734, 741 (2001).

Failure to exhaust administrative remedies is an affirmative defense. Jones v. Bock, 549 U.S. 199, 215-216 (2007). Once the affirmative defense is raised, the court must determine whether the plaintiff properly exhausted administrative remedies by "using all steps that the [institution] holds out, and [by] doing so *properly* (so that the [institution] addresses the issues on the merits)." Woodford, 548 U.S. at 90 (quotation and citation omitted). "Proper exhaustion demands compliance with an [institution's] deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." Id. at 90-91.

A. Count One

In count one of the Second Amended Complaint, Plaintiff alleges that Defendants Jester and Middleton interfered with Plaintiff's First, Sixth, and Fourteenth Amendment

rights to send and receive legal mail. Plaintiff describes five separate incidents in count one. He asserts (1) that Defendant Jester, in her capacity as the CCF mail clerk, "opened, read, and confiscated" mail sent to Plaintiff by a federal court on July 6, 2009. Plaintiff asserts (2) that Defendant Jester failed to "process[ ] . . . as legal mail" correspondence sent to Plaintiff by the United States Supreme Court on September 18, 2009. Plaintiff asserts (3) that Defendant Jester did not "process[ ] . . . as legal mail" a letter sent to Plaintiff by an attorney with the Oklahoma Bar Association ("OBA") on September 15, 2009, and Plaintiff asserts (4) his incoming "legal mail brought to CCF for Plaintiff by [an attorney]" on December 3, 2009, was "delayed by 2 ½ days for no valid reason." Finally, Plaintiff contends (5) he was not allowed to go to the CCF mail room on September 25, 2009, to send out a package of legal mail because he had not complied with CCF policy requiring him to obtain prior written permission to go to the prison mail room, which "caused undue delay in sending out legal mail."

Plaintiff contends that he exhausted administrative remedies with respect to these claims in grievances identified as 09-126, 09-157, 09-158, 09-163, and 09-216. The CCF Defendants contend that Plaintiff failed to exhaust available administrative remedies concerning his claims in ground one.

The Special Report includes a copy of the DOC administrative grievance procedure, DOC Policy No. OP-090124. This well-established policy "has a requirement of informal consultation with staff, then three written steps: a Request to Staff form, a formal grievance, and an appeal to the administrative review authority." Thomas v. Parker, 609 F.3d 1114,

6

1117 (10th Cir. 2010)(citing DOC Policy No. OP-090124).   Plaintiff must complete each of these steps, and do so following the procedures adopted by DOC, in order to exhaust his administrative remedies.

Plaintiff was placed on grievance restriction by CCF Acting Warden Middleton on October 7, 2009, for one year, and the grievance restriction has been extended by DOC until February 8, 2011. Plaintiff's Response (Doc. # 76), att. 2, at 1; Special Report I, Ex. 2, pt. 3, at 226; Special Report II, Att. 9, at 11.  CCF Warden Taylor has advised Plaintiff that the grievance restriction extends until March 31, 2011.   Plaintiff's Response (Doc. # 76), Att. 2, at 2.  An offender on grievance restriction must satisfy additional procedures in order to pursue a grievance under DOC Policy No. OP-090124(IX)(B), including the submission of a verified affidavit with the grievance that contains a list by grievance number, date, description, and disposition at each level, of all grievances previously submitted by the offender within the previous 12 months.  Special Report I, Ex. 10.  While Plaintiff was placed on grievance restriction, he must complete the steps of the administrative grievance procedure and the additional procedures outlined by DOC in order to exhaust his available administrative remedies.

In Grievance No. 09-126 submitted by Plaintiff on July 8, 2009, to CCF Warden Taylor, Plaintiff complained that on July 6, 2009, Defendant Jester refused to give him legal mail addressed to him from the United States District Court. Special Report I, Ex. 2, at 7. This grievance relates to the first incident alleged by Plaintiff in count one.   In response to the grievance, Plaintiff was advised that the grievance was being returned to him unanswered

because Plaintiff had a pending lawsuit regarding the issue of his legal mail. Special Report I, Ex. 2, pt. 1, at 6. DOC's grievance policy provides that "[g]rievances may not be submitted about matters that are in the course of litigation." Special Report I, Ex. 10, at 3 (DOC Policy No. OP-090124 (II)(B)(2)).

In Grievance No. 09-157 submitted by Plaintiff on September 22, 2009, to CCF Warden Taylor, Plaintiff complained that on September 17, 2009, he "received in regular unit mail an envelope sent to me by the U.S. Supreme Court Public Information Office. It was not processed as legal mail." Special Report I, Ex. 2, at 64. This grievance tracks the second incident alleged in count one. In response to the grievance, Plaintiff was advised that the grievance was being returned to him unanswered because Plaintiff had a pending lawsuit on this subject. Special Report I, Ex. 2, at 63.

In Grievance No. 09-158 submitted by Plaintiff on September 23, 2009, to CCF Warden Taylor, Plaintiff complained that on September 15, 2009, he "received in our regular unit mail a letter from [an] Asst. General Counsel of the Oklahoma Bar Association" and the letter was opened and not processed as legal mail. Special Report I, Ex. 2, at 69-70. This grievance concerns the third incident alleged in count one. In response to this grievance, Plaintiff was advised that the grievance was being returned unanswered because Plaintiff had a pending lawsuit on the subject. Special Report I, Ex. 2, at 68.

The CCF Defendants assert that Plaintiff had two pending lawsuits in Payne County District Court during this time period and the lawsuits included ongoing complaints about his legal mail. Thus, CCF officials followed DOC policy by refusing to consider the merits

of Plaintiff's grievances regarding the same complaints as those involved in the pending state court actions. In response to the CCF Defendants' Motion, Plaintiff asserts that his state court actions were filed prior to the incidents complained of in the grievances and therefore the incidents could not have been included in the prior lawsuits. According to Plaintiff's statements in his Second Amended Complaint, he filed an action in the District Court of Payne County on May 11, 2009, which included a claim concerning his "receipt of legal mail." Second Amended Complaint, at 25 (designated as page 27 by Plaintiff). The action named Defendants Jester and Middleton as defendants. Additionally, Plaintiff states in his Second Amended Complaint that he filed another action in the District Court of Payne County on June 24, 2009 in which he named Defendants Middleton and Jester and other CCF officials as defendants. Second Amended Complaint, at 25 (designated as page 27 by Plaintiff). Even if these lawsuits were filed before the incidents alleged in count one occurred, it is certainly possible the claims in these state court lawsuits included the three above-described incidents alleged in count one. Plaintiff has not demonstrated that the state court actions did not include the three above-described incidents. Moreover, Plaintiff did not challenge the explanation provided by CCF officials by appealing the grievance or filing a separate grievance to complain about the handling of his three grievances. "Even where the 'available' remedies would appear to be futile at providing the kind of remedy sought, the prisoner must exhaust the administrative remedies available." Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir. 2002)(citing Booth v. Churner, 532 U.S. 731, 740 (2001)). Plaintiff has not demonstrated that he exhausted available administrative remedies concerning the first

three alleged incidents in count one.

In Grievance No. 09-216 submitted by Plaintiff on December 14, 2009, Plaintiff asserted that delivery of his "legal mail" from his attorney was not received by him until two and a half days after it was delivered to the prison. Special Report II, Att. 7, at 1. This grievance tracks the fourth incident alleged in count one. In a response dated December 14, 2009, Plaintiff was advised by Warden Taylor that the grievance was denied because "[t]here is ongoing training and monitoring to ensure that this incident does not happen" and "[t]here is no indication of intent [sic] if, in fact there was a delay." Special Report II, Att. 7, at 3. Plaintiff's appeal of this decision to DOC was returned unanswered because Plaintiff was on grievance restriction and proper documentation was not included with the appeal. Special Report II, Att. 7, at 11. Plaintiff was advised that he could resubmit a corrected grievance appeal within ten days of receipt of the notice. Plaintiff does not assert or demonstrate that he resubmitted his grievance appeal. Plaintiff alleges that it would have been futile for him to resubmit the grievance appeal, but he does not demonstrate that he exhausted available administrative remedies concerning this claim.

In Grievance No. 09-163 submitted by Plaintiff on October 1, 2009, to CCF Warden Taylor, Plaintiff complained that on September 25, 2009, he was not allowed to leave his housing unit to go to the prison mail room to mail out "legal mail" because he had not obtained prior approval to go to the mail room. Special Report I, Ex. 2, at 79-80. He had to wait until the following Monday to mail the documents. This grievance relates to the fifth incident alleged in count one. In a response from Defendant Middleton dated October 7,

10

2009, Plaintiff was advised that "[c]ontrols on inmate movement are a common practice in a correctional setting in order to provide a safe and secure environment. Movement across the yard to the mailroom is no exception. The new policy was announced in advance. Grievance denied." Special Report I, Ex. 2, at 77, 82-83. Plaintiff appealed the denial, and he was advised in a letter from Defendant Morton, the DOC Director's Designee, dated October 20, 2009, that the grievance had been returned to Warden Taylor for further review and investigation and the submission of an amended response. Special Report I, Ex. 2, at 75.

In another response, Warden Taylor advised Plaintiff that the grievance was denied because "the issue of controlled movement was not presented as a policy but as a practice that was communicated to all offenders through posted memos and town hall meetings. Offenders will only be sent to the legal mail call if they appear on the list generated by the mailroom." Special Report I, Ex. 2, at 94. Plaintiff submitted a grievance appeal dated November 18, 2009. Special Report I, Ex. 2, at 92. In a response from DOC Director's Designee Morton dated November 30, 2009, Plaintiff was advised that his grievance was being returned unanswered because he was placed on grievance restriction on October 7, 2009, and he failed to comply with the additional procedures set forth in DOC policy in order to appeal a grievance while on grievance restriction. Special Report I, Ex. 2, at 91. Plaintiff was advised that he could resubmit a corrected grievance appeal within ten days of receipt of the notice. Plaintiff does not assert or demonstrate that he resubmitted his grievance appeal. Plaintiff alleges that it would have been futile for him to resubmit the grievance appeal, but he does not demonstrate that he exhausted available administrative remedies

11

concerning this claim.

Because Plaintiff failed to exhaust administrative remedies concerning each of the incidents alleged in count one of the Second Amended Complaint, the CCF Defendants' Motion to Dismiss these claims should be granted.

B. Count Two

In count two of the Second Amended Complaint, Plaintiff contends that Defendants Taylor and Middleton interfered with his "1st and 14th Amendment right to litigate in court." As factual support for this claim, Plaintiff describes three incidents. Plaintiff alleges that "[d]uring September, 2009 [he] was denied adequate time in the CCF general library to work on proven court deadlines for no valid reason." Second Amended Complaint, at 6. Plaintiff next alleges that "[d]uring September, 2009 [his] request for a Trust Fund printout to support his motion for pauper's status regarding an action filed in court was significantly delayed for no valid reason." Second Amended Complaint, at 6. Finally, Plaintiff alleges that "[d]uring October and November, 2009 [his] request for a Trust Fund printout to support his motion for pauper's status regarding an action filed in court was significantly delayed for no valid reason." Second Amended Complaint, at 6. Plaintiff alleges that he exhausted administrative remedies concerning these alleged incidents in Grievance No. 09-152, Grievance No. 09-153, and Grievance No. 09-199, respectively.

In Grievance No. 09-152 submitted by Plaintiff on September 8, 2009, Plaintiff complained that he needed to be scheduled for time in the library to meet an upcoming deadline in a pending state court lawsuit. He submitted a Request to Staff form with the

12

grievance in which he asked the librarian if he could be scheduled for time in the library to work on a court-ordered deadline. The Request to Staff form includes the librarian's response as follows: "Mr. Middleton said we will gladly schedule you for Friday or Tuesday if you can provide documentation to show the date of your deadline. You may have Ms. Wesson contact me." Special Report I, Ex. 2, at 34. This grievance tracks the first alleged incident in count two. In response to Plaintiff's grievance on this matter, Warden Taylor advised Plaintiff that the grievance was denied because

> [t]he facility has been in lockdown and is slowly come up [sic] off lockdown. The programs are slowly being started up this week. Therefore, that is why you didn't get into the library. Security is our first priority and until I feel that the facility is ready to come fully off lockdown that is when programs can be fully implemented. You have been given an appointment for September 10, 2009, [sic] I feel this gives you adequate time to prepare your legal papers and send before the deadline date of September 17, 2009.

Special Report I, Ex. 2, at 30. Plaintiff's grievance appeal was returned to Warden Taylor for an amended response. Special Report I, Ex. 2, at 29. In an amended response dated October 12, 2009, Warden Taylor advised Plaintiff that his grievance was partially granted as he was given an appointment in the library with adequate time to complete paperwork prior to the deadline. Plaintiff's appeal was returned unanswered by Defendant Morton. Plaintiff was advised that his grievance appeal was unanswerable as there were no time frames specified for the alleged action and Plaintiff did not submit the Request to Staff to the appropriate staff member. Special Report I, Ex. 2, at 24. Plaintiff was advised that he could resubmit the grievance appeal within ten days of his receipt of the notice. Plaintiff does not

assert or demonstrate that he resubmitted his grievance appeal. Plaintiff alleges that it would have been futile for him to resubmit the grievance appeal, but he does not demonstrate that he exhausted administrative remedies concerning this claim.

In Grievance No. 09-153 submitted by Plaintiff on September 15, 2009, Plaintiff complained that he "should not have to wait 11 days to get a printout of my trust fund activity" and "the delay is yet another intentional effort to try to impede my access to the courts and/or more retaliation for the two lawsuits I have filed against CCF officials in the District Court of Payne County." Special Report I, Ex. 2, at 54-55. In response to this grievance, Warden Taylor stated that the grievance was denied because

> [t]he request [to] staff explained to you what needs to be done prior to getting a copy of your trust funds. The lack of planning on your part may cause a delay in your court deadlines. However, we will get them to you as soon as they become available and if you have filled out a disbursement for the copies.

Special Report I, Ex. 2, at 52. Plaintiff's appeal of this decision was returned unanswered with the explanation that his Request to Staff was submitted "out of date from time of incident due to the [Request to Staff] dated 09/10/2009 you submitted with your grievance." Special Report I, Ex. 2, at 51. Plaintiff was advised he could resubmit the corrected grievance appeal within ten days of receipt of the notice. Plaintiff does not assert or demonstrate that he resubmitted his grievance appeal. Plaintiff alleges that it would have been futile for him to resubmit the grievance appeal, but he does not demonstrate that he exhausted administrative remedies concerning this claim.

In Grievance No. 09-199 submitted by Plaintiff on November 16, 2009, Plaintiff complained about a delay in his receipt of trust fund information needed to accompany an *in forma pauperis* ("IFP") application and asserted that the "slow processing" of inmates' requests for trust fund information "is intentional to try to make me and other inmates miss court deadlines. This is intentional obstruction of justice and an attempt to deny me access to the courts." Special Report I, Ex. 2, pt. 2, at 140-141. The grievance was returned unanswered because Plaintiff did not follow instructions for requesting the trust fund information. Special Report I, Ex. 2, pt. 2, at 139. Plaintiff did not appeal the grievance.

Plaintiff did not exhaust available administrative remedies concerning his claims in count two. Therefore, the CCF Defendants' Motion seeking dismissal of count two on the ground of lack of exhaustion should be granted.

C. Count Three

In count three, Plaintiff alleges that "Defendants Taylor, Middleton, Battles, and Sebenik retaliated against Plaintiff by putting him in segregation and threatening him, in violation of Plaintiff's 14th Amendment rights to due process and equal treatment, and his 1st Amendment right to be free from retaliation." Second Amended Complaint, at 7. In support of this claim, Plaintiff asserts that he was placed in administrative segregation on October 31, 2009, by Defendant Battles. Plaintiff alleges that he was advised by Defendant Sebenik on November 3, 2009, that he would be given an offense report for helping other inmates with legal work, and he was given the offense report on November 5, 2009. He alleges that he was released from administrative segregation after eight days and moved to another

housing unit. He alleges that on October 31, 2009, Defendant Taylor "looked in the window" of Plaintiff's cell in the segregation unit "to let him know that he was being punished." Plaintiff asserts he had previously sued Defendants Taylor and Middleton, and "this was obvious retaliation." He also alleges another inmate "was given a Class B (least serious category) write-up for being present in . . . Plaintiff's cell," although Plaintiff admits his offense report was later amended to assert a Class B offense of "aiding and abetting a rule violation." Plaintiff asserts he is challenging the "disparate treatment," not the disciplinary offense itself.[3]

In Grievance No. 09-203 submitted by Plaintiff on November 25, 2009, Plaintiff complained that CCF officials were "retaliating against [him] or trying to intimidate [him]" by placing him in administrative segregation. Special Report I, Ex. 2, pt. 2, at 149-150. In a response to this grievance, Plaintiff was advised the grievance was returned unanswered because he was on grievance restriction and had not submitted the proper documentation. Special Report I, Ex. 2, at 148. Plaintiff was also advised that his request for disciplinary action against staff would not be addressed in the grievance process. There is no evidence that Plaintiff completed the administrative grievance procedure by appealing to DOC. As Plaintiff failed to exhaust available administrative remedies concerning the claim in count

---

[3]According to the undisputed misconduct record included in the Special Report, Plaintiff entered a guilty plea to the disciplinary offense of "Individual Disruptive Behavior." Special Report I, Ex. 4, at 1. The incident report completed by the CCF correctional official stated that Plaintiff and another inmate were found on October 31, 2009, in Plaintiff's cell with paper obstructing the view inside the cell. The inmates were in inappropriate positions and their clothing was in disarray. Special Report I, Ex. 4, at 6.

three, the CCF Defendants' Motion seeking dismissal of this claim should be granted.

### D. Count Four

In count four, Plaintiff asserts that Defendants Taylor, Choate, and Ms. Jones denied Plaintiff his First Amendment "right to freedom of speech." As factual support, Plaintiff asserts that he was fearful of retaliation "for saying anything" during a meeting with inmates conducted at the prison on March 31, 2010, by Defendants Taylor and Choate. Plaintiff further alleges that on March 20, 2010, Defendant Ms. Jones refused to allow Plaintiff to make a collect call to his son, Mr. Alan Burnett, who is also Plaintiff's attorney.

There is no evidence that Plaintiff filed grievances concerning the claims asserted in count four. Plaintiff asserts that he submitted a grievance "regarding [Ms. Jones'] denial" of his telephone request, but the grievance was returned unanswered by Warden Taylor. In a letter addressed to Plaintiff dated March 31, 2010, Warden Taylor advised Plaintiff that his "grievances dated March 27, 28 and 29, 2010 are being returned unanswered due to dealing with issues that have been answered in the past which dealt with your son's visitation, phone calls and a grievance on medical after you received what you asked for." Special Report II, Att. 13, at 15. The letter also advises Plaintiff that he was being placed on grievance restriction by Warden Taylor until March 31, 2011, as a result of his continuing abuse of the grievance process. Id. There is no evidence that Plaintiff completed the administrative grievance procedure with respect to his claims in count four. Accordingly, the CCF Defendants' Motion to Dismiss the claims in count four should be granted.

<u>E. Count Five</u>

Plaintiff contends in count five that Defendants Roof and Taylor retaliated against Plaintiff by denying him prescribed medication in violation of the First and Eighth Amendments. As support for this claim, Plaintiff contends that on December 17, 2009, his prescription for Naproxen was not renewed. Plaintiff contends that he had previously sued Defendant Roof. Plaintiff further contends that in February and March 2010, Defendant Roof refused to have Plaintiff's prescribed medication, Naproxen, brought to Plaintiff in his cell where he was "locked down and could not come get it" "for several days." Plaintiff alleges that he exhausted administrative remedies concerning these claims.

In Grievance No. 10-23 submitted by Plaintiff on February 8, 2010, Plaintiff complained that his prescription for Naproxen was not renewed on December 17, 2009. Special Report II, Att. 10, at 1. In response, Plaintiff was advised by Defendant Roof, the facility health services administrator, and Warden Taylor that his grievance was denied because Plaintiff was evaluated on February 3, 2010, that Naproxen was prescribed on that date, and "[i]t is not prudent to automatically renew a medication before having the opportunity to evaluate the need for it." Special Report II, Att. 10, at 2. Plaintiff's attempted appeal of the grievance decision was returned by DOC's Medical Services Administrator, who advised Plaintiff that he failed to submit the required documentation in compliance with his grievance restriction. Special Report II, Att. 10, at 9. Plaintiff has not demonstrated that he resubmitted the grievance appeal.

On March 2, 2010, Plaintiff submitted a Request to Staff to CCF "Health Services"

requesting that his "monthly supply" of his prescribed medication, Naproxen, be provided as the medication would run out on March 5, 2010. Second Amended Complaint, Exhibits pt. 3, at 21. In response, Plaintiff was advised the medication was "ordered." Id. In another Request to Staff to CCF "Health Services" submitted March 11, 2010, Plaintiff again requested that his prescription medication, Naproxen, be "brought to my cell . . ." Special Report II, Att. 13, at 3. In response, Plaintiff was informed that "60 tab[let]s [were] provided on 3/18/10." Id. Plaintiff submitted a grievance to CCF Health Services Administrator Roof dated March 28, 2010, in which he complained that his prescription medication was not provided from March 5, 2010 until March 18, 2010. Special Report II, Att. 13, at 1-2. The grievance was returned to him unanswered by Warden Taylor. Special Report II, Att. 13, at 15. Warden Taylor advised Plaintiff that he had submitted grievances that involved issues answered in the past, including "a grievance on medical after you received what you asked for," and that Plaintiff was again placed on grievance restriction until March 31, 2011, as a result of his continued abuse of the grievance process. Special Report II, Att. 13, at 15. Plaintiff's attempted appeal of this decision was returned to him unanswered because he was on grievance restriction and had not included the proper documentation. Special Report II, Att . 13, at 18. There is no evidence that Plaintiff resubmitted the grievance appeal. Plaintiff has failed to exhaust administrative remedies concerning his claims in count five. Accordingly, the CCF Defendants' Motion to Dismiss the claims in count five should be granted.

F. Count Six

In count six, Plaintiff asserts that Defendant Taylor deprived Plaintiff of his First Amendment right to freely exercise his chosen "Messianic Believers" religion and denied him "equal treatment."  As support Plaintiff contends that CCF was placed on lockdown on November 21, 2009, and his request to the facility chaplain for a group religious service "to observe Hannukah and Christmas Day" for the "less than 10" CCF inmates who practice the "Messianic Believers" religion was denied, even though other CCF inmates "were allowed to do their normal [prison] jobs."  Second Amended Complaint, at 10 (designated as page 12 by Plaintiff).

Plaintiff asserts that he exhausted administrative remedies concerning this claim by submitting Grievance No. 09-225, which was denied by Defendant Warden Taylor.  In Grievance No. 09-225, submitted by Plaintiff on December 23, 2009, Plaintiff complained that the CCF chaplain had denied his request for "religious services for Hanukkah or Christmas" because the facility was locked down.  Plaintiff complained that this decision was "obvious discrimination, as well as denial of my 1st Amendment right to practice my religion" because "[g]roups of inmate workers" were "allowed to work daily, and [were] not locked down." Special Report II, Att. 8, at 1-2.  In a response, Warden Taylor informed Plaintiff the grievance was denied for the following reasons:

> You have not been discriminated against because some inmates are working at their jobs.  This has nothing to do with you being able to practice your religion.  During lockdown of a facility all programs are suspended until deemed safe by the Warden or other officials to resume the programs and normal operation of

> the facility. You have not been denied your right to practice
> your religion. Until the facility is back to normal operations you
> can practice your religion in your cell.

Special Report II, Att. 8, at 3. Plaintiff's attempted appeal of this grievance decision was

returned unanswered by DOC official Defendant Morton with the explanation that Plaintiff

was on grievance restriction and had not included the proper documentation. Special Report

II, Att. 8, at 11. Plaintiff was advised he could resubmit the grievance appeal within ten days

of his receipt of the notice. Plaintiff has not demonstrated that he resubmitted the grievance

appeal. Plaintiff alleges that it would have been futile for him to resubmit the grievance

appeal, but he does not demonstrate that he exhausted available administrative remedies

concerning this claim. Accordingly, the CCF Defendants' Motion to Dismiss this claim

should be granted.

### G. Count Seven

In count seven, Plaintiff asserts that "Defendants Taylor, Middleton, and Choate

retaliated against Plaintiff by wrongfully demoting his level, in violation of Plaintiff's 1st

Amendment right to be free from retaliation, and his 14th Amendment rights to due process

and equal treatment." Second Amended Complaint, at 11 (designated as page 13 by

Plaintiff). As factual support for this claim, Plaintiff asserts that during a routine 120-day

adjustment review conducted on February 17, 2010, Defendant Choate demoted Plaintiff

from classification level four to classification level one because Plaintiff did not have a

prison job. Plaintiff contends that DOC policy requires the attendance of three members of

the inmate's unit team when such a demotion occurs and that only two unit members were

in attendance when he was demoted. Plaintiff further asserts that other inmates at the facility are classified at levels three and four even though they do not have prison jobs, and Plaintiff asserts that the demotion was retaliation for his previous lawsuits against Defendant Middleton. Plaintiff contends that he exhausted administrative remedies for this claim by submitting Grievance No. 10-35, which was denied.

In Grievance No. 10-35 submitted by Plaintiff on March 15, 2010, Plaintiff complained that during his 120-day review conducted on February 17, 2010, his unit manager, Mr. Choate, demoted him from level 4 to level 1 even though Plaintiff had not been found guilty of a disciplinary offense. Special Report I, Ex. 2, pt. 3, at 254. Warden Taylor responded to the grievance that "this has already been resolved as of 3/15/10." Special Report I, Ex. 2, pt. 3, at 253. Plaintiff appealed the grievance decision. However, the attempted grievance appeal was returned unanswered by Defendant Morton. Special Report, I, Ex. 2, pt. 3, at 249. Defendant Morton advised Plaintiff in a letter dated April 8, 2010, that he had not complied with DOC's grievance policy because he did not submit a complete affidavit according to DOC's grievance restriction policy. Id. There is no evidence that Plaintiff resubmitted the grievance appeal. Because Plaintiff did not exhaust administrative remedies concerning his claim in count seven, the CCF Defendants' Motion to Dismiss count seven should be granted.

### H. Counts Eight and Nine

Plaintiff asserts in count eight that "Defendants Taylor and Choate denied Plaintiff's 1st and 6th Amendment rights to freedom of speech and familial association, and right to

privacy and confidential communication with his attorney on March 26, 2010." Second Amended Complaint, at 12 (designated as page 14 by Plaintiff). Plaintiff asserts that his request submitted to Defendants Taylor and Choate for a contact visit with his family on March 26, 2010, was denied. As a result, "all conversation between Plaintiff and his family, including his attorney and son, Alan Burnett, was via a telephone system which was recorded." Second Amended Complaint, at 12 (designated as page 14 by Plaintiff). Plaintiff contends that "[t]he restriction to a one hour, non-contact visit was malicious, sadistic, intentional, and retaliatory." Second Amended Complaint, at 13 (designated as page 15 by Plaintiff). Plaintiff asserts that he exhausted administrative remedies concerning this claim by submitting Grievance No. 10-38, which was denied, and appealing the grievance decision, which was also denied.

In his ninth count, Plaintiff asserts that "Defendants Justin Jones, Taylor, and Choate retaliated against Plaintiff and subjected him to unequal treatment and unequal enforcement" by denying his request for a contact visit with out-of-state visitors. Second Amended Complaint, at 14 (designated as page 16 by Plaintiff). Plaintiff also alleges in count nine that DOC's visitation policy, OP-030118, is unconstitutional as it is "overly broad, vague, arbitrary, and subject to unequal enforcement and interpretation by prison officials." Id. Plaintiff alleges, as he does in count eight, that the "true motive" for the denial of his request for a contact visit on March 26, 2010, with his family was "retaliation due to Plaintiff's grievances and lawsuits agains[t] prison officials, including [Defendant] Taylor." Id. Plaintiff contends that he exhausted administrative remedies concerning this claim by

submitting Grievance No. 10-38.

In a Request to Staff submitted by Plaintiff on March 16, 2010, to Warden Taylor, Plaintiff complained that his request for a special visit on March 26, 2010, with out-of-state family members had been denied because Plaintiff was classified as level one. The response from Warden Taylor states that "[d]uring this lockdown I am not approving special visits. I did approve you for a visit [with] your attorney." Special Report II, Att. 12, at 4. On March 29, 2010, Plaintiff submitted Grievance No. 10-38 to Warden Taylor in which he complained that his "visit on 03-26-10 was limited to a 1 hour non-contact visit out of retaliation for my lawsuits. The excuse was that I am on Level 1. I was wrongfully dropped from Level 4 to 1 by [Defendant] Choate because I do not have a job." Special Report II, Att. 12, at 1. Citing DOC Policy No. OP-030118, the response states that "[s]ince visitation is a privilege not a right, your grounds for this grievance is [sic] unfounded," citing DOC Policy No. OP-030118. Special Report II, Att. 12, at 3. Plaintiff's attempted appeal of the grievance response was returned unanswered by DOC Director's Designee Morton because Plaintiff was on grievance restriction and he had not included the proper documentation. Special Report II, Att. 12, at 12. There is no evidence that Plaintiff resubmitted the grievance appeal. Because Plaintiff did not exhaust administrative remedies concerning his claims in count eight and count nine, the CCF Defendants' Motion to Dismiss count eight and count nine should be granted.

I. Count Ten

In count ten, Plaintiff asserts that "Defendants Justin Jones, Debbie Morton, Taylor,

Middleton, and Kathy Jones have perverted and abused the grievance policy and procedure, in violation of the 1st, 8th, and 14th Amendments." Second Amended Complaint, at 16 (designated as page 18 by Plaintiff). As support for this claim, Plaintiff asserts that these "Defendants have engaged in a policy and practice of attempting to prevent Plaintiff and other inmates from exhausting their administrative remedies to stop them from filing lawsuits, or to greatly inhibit or restrict the ability to do so." Id.

Plaintiff asserts that he exhausted administrative remedies concerning this claim by submitting Grievance No. 09-170 and Grievance No. 09-220. In Grievance No. 09-170 submitted by Plaintiff on October 6, 2009, to Warden Taylor, Plaintiff complained that his grievances numbered 09-152, 09-157, and 09-158 were returned to him by Defendant Ms. Jones unanswered "on the pretext that they were part of a pending lawsuit" but "these incidents happened after the lawsuits were filed" and Ms. Jones should "be instructed to answer [his] grievances and sign her name to all grievances she returns, answered or unanswered." Special Report I, Ex. 2, pt. 2, at 135-136. The grievance was returned to Plaintiff unanswered with the explanation that Grievance "09-152 was answered and you received an appointment for library time. [Grievances] 157 and 158 [are] dealing with a lawsuit about your legal mail." Special Report 1, Ex. 2, pt. 2, at 134. There is no evidence showing Plaintiff resubmitted or appealed the grievance response.

Plaintiff submitted a Request to Staff form dated December 10, 2009, to CCF grievance officer Ms. Jones in which he requested information concerning "acceptable language for my grievance restriction affidavit." Special Report I, Ex. 2, pt. 2, at 191. In

response, Ms. Jones advised Plaintiff that according to DOC's grievance restriction policy a "duly verified affidavit will be notarized at this facility. I will not accept any certain wording. You can make a request for Ms. Murrell to notarize your paper." Id. In Grievance No. 09-220, Plaintiff submitted a grievance on December 21, 2009, in which he complained that he should be allowed to use "the statutory verification language of 12 O.S. 426 . . . for affidavits in compliance with [DOC Policy No.] OP-090124 IX (B) regarding grievance restriction instead of notarization." Special Report I, Ex. 2, pt. 2, at 190. Warden Taylor responded that the grievance was denied because "affidavits [are] notarized when filing a grievance as long as you are [on] grievance restriction." Special Report I, Ex. 2, pt. 2, at 189. Plaintiff's attempted appeal of the grievance decision was returned unanswered because Plaintiff was on grievance restriction and had not included the proper documentation. Special Report I, Ex. 2, pt. 2, at 185. There is no evidence that Plaintiff resubmitted the grievance appeal. Because Plaintiff did not exhaust available administrative remedies concerning the issue raised in count ten, the CCF Defendants' Motion to Dismiss the claim in count ten on this basis should be granted.

### J. Counts Eleven and Twelve

In his eleventh claim, Plaintiff asserts that "the cumulative effect of the individual violations constitute a constitutional violation, even if the individual violations do not." Second Amended Complaint, at 19 (designated as page 21 by Plaintiff). In count twelve, Plaintiff asserts that "all Defendants violated Plaintiff's legal rights under state and/or common law, cognizable under 28 U.S.C. § 1367." Second Amended Complaint, at 20

(designated as page 22 by Plaintiff). Plaintiff contends "[t]here is no available administrative remedy" for these claims. Plaintiff's subjective belief that administrative remedies were not available for review of these claims is not sufficient to excuse his failure to exhaust administrative remedies concerning the claims. Plaintiff has failed to exhaust available administrative remedies concerning his claims in counts eleven and twelve, and the CCF Defendants' Motion to Dismiss these claims due to Plaintiff's failure to exhaust available administrative remedies should be granted.

Alternatively, the claims in counts eleven and twelve are frivolous because Plaintiff's arguments have no arguable basis in fact or law. <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989). Therefore, the claims in counts eleven and twelve should be dismissed pursuant to 28 U.S.C. § 1915(e)(2)(B) as to all Defendants.

K. Count Thirteen

In count thirteen, Plaintiff contends that "Defendants Justin Jones, Taylor, and Middleton have denied Plaintiff a safe environment, due to chronic shortage of staff for financial reasons, in violation of the 8th Amendment." Second Amended Complaint, at 21 (designated as page 23 by Plaintiff). As support for this claim, Plaintiff alleges that a "large scale prison gang fight" occurred at the prison on November 21, 2009, that the prison was placed on total lockdown and had "remained on either total lockdown or modified lockdown" since that date, and that "other incidents of violence have occurred, most notably on 02/25/10 and 04/08/10." <u>Id.</u> Plaintiff alleges that Defendant Jones was "responsible for monitoring the staffing levels of the private prisons he has contracted with, and ensuring inmate safety"

27

and Defendant Jones had "failed to take appropriate measures to ensure that CCF Warden Taylor provided a safe environment for Plaintiff and other CCF inmates." Id. Plaintiff further asserts that "Warden Taylor knowingly and reckessly [sic] disregarded the shortage of staff situation at CCF during the last two years, purely for financial reasons. And with the knowledge that the record shows an unuaually [sic] high number of assaults, violence, gang activity, and prevelance [sic] of weapons amongst the inmates prior to the large scale prison gang fights which occurred at CCF on 11/21/09." Id. at 23 (designated as page 25 by Plaintiff).

Plaintiff asserts that he exhausted administrative remedies concerning this claim by submitting Grievance No. 09-168. In this grievance submitted by Plaintiff on October 6, 2009, Plaintiff complained that "[t]he critical shortage of staff at this facility over the last several months has gotten steadily worse. This has caused serious problems with essential services, recreational activities and safety issues to the point that this facility is no longer a safe environment for the inmates, staff, and Correctional Officers." Special Report II, Att. 5, at 1-2. In response to the grievance, Plaintiff was informed that the grievance was denied because "[t]he conditions of confinement in your current housing unit meet all current applicable CCA, DOC, and ACA [sic] standards. Your contentions regarding essential services and safety are unfounded." Special Report II, Att. 5, at 3. Plaintiff's attempted appeal of this grievance decision was returned to him unanswered by Defendant Morton. Special Report II, Att. 5, at 6. Defendant Morton explained that the grievance was being returned unanswered because the grievance did not specify "time frames . . . for the alleged

action(s) to have occurred" and Plaintiff did not submit the Request to Staff to the appropriate staff member. Special Report II, Att. 5, at 6. There is no evidence that Plaintiff resubmitted the grievance appeal. As Plaintiff did not exhaust available administrative remedies concerning this claim, the CCF Defendants' Motion to Dismiss the claim in count thirteen on this basis should be granted.

III. Eleventh Amendment Immunity - DOC Defendants

The Eleventh Amendment provides immunity for states in actions brought in federal court by the citizens of that state. Atascadero State Hosp. v. Scanlon, 473 U.S. 234, 238 (1985). This immunity extends to suits against a state agency, Pennhurst State School & Hosp. v. Halderman, 465 U.S. 89, 100 (1984), and to suits for damages against state officials acting in their official capacities. Edelman v. Jordan, 415 U.S. 651, 662-663 (1974). Accordingly, Defendants Mr. Jones and Morton's Motion to Dismiss Plaintiff's action against them in their official capacities should be granted.

IV. Personal Participation - DOC Defendants - Counts One Through Eight

The DOC Defendants have moved to dismiss Plaintiff's claims in counts one through eight based on Plaintiff's failure to allege the DOC Defendants' personal participation in the alleged constitutional deprivations.

Because "[s]ection 1983 will not support a claim based on a *respondeat superior* theory of liability," Polk County v. Dodson, 454 U.S. 312, 325 (1981), personal participation is an essential element of a §1983 action seeking damages from a defendant in his or her individual capacity. Mitchell v. Maynard, 80 F.3d 1433, 1441 (10th Cir. 1993)(quotation

omitted); <u>Olson v. Stotts</u>, 9 F.3d 1475, 1477 (10th Cir. 1993); <u>Bennett v. Passic</u>, 545 F.2d 1260, 1262-1263 (10th Cir. 1976). "[T]he defendant's role must be more than one of abstract authority over individuals who actually committed a constitutional violation." <u>Fogarty v. Gallegos</u>, 523 F.3d 1147, 1162 (10th Cir. 2008). "It is not enough to establish that the official should have known of the risk of harm." <u>Barney v. Pulsipher</u>, 143 F.3d 1299, 1310 (10th Cir.1998). To establish a § 1983 claim for damages against a supervisor, the plaintiff "must show that an affirmative link exists between the [constitutional] deprivation and either the supervisor's personal participation, his exercise of control or direction, or his failure to supervise." <u>Green v. Branson</u>, 108 F.3d 1296, 1302 (10th Cir.1997) (quotations omitted). <u>Accord</u>, <u>Meade v. Grubbs</u>, 841 F.2d 1512, 1527 (10th Cir. 1988).

In Plaintiff's Second Amended Complaint, Plaintiff's allegations in counts one through eight do not allege facts sufficient to state a claim of personal participation by the DOC Defendants. Accordingly, the DOC Defendants' Motion to Dismiss the claims against them in their individual capacities in counts one through eight should be granted.

## V. Count Nine

In count nine, Plaintiff alleges that he was "subjected . . . to unequal treatment and unequal enforcement" of DOC Policy No. OP-030118, which governs the visitation privileges of inmates in the custody of DOC. Second Amended Complaint, at 14 (designated as page 16 by Plaintiff). As factual support for his claim, Plaintiff contends that on March 26, 2010, Plaintiff was allowed only a one-hour, non-contact visit with his family members who had traveled to see him from out-of-state. He asserts that Defendants Taylor and Choate

refused his request for a "special visit," which he alleges would have been a contact visit, for the stated reason that Plaintiff was then classified as Level 1. However, Plaintiff contends that the "true motive [for denying his request for a 'special visit'] was retaliation due to Plaintiff's grievances and lawsuits agains[t] prison officials, including Taylor." Id. He also alleges that this action was "[d]iscriminatory" because other inmates were routinely allowed contact visits with out-of-state visitors upon request, even if the inmate was classified as Level 1.

In this ground, Plaintiff challenges the constitutionality of DOC Policy No. OP-030118, alleging that the policy is "vague, arbitrary, and overly broad, in violation of the 14th Amendment." Second Amended Complaint, at 14 (designated as page 16 by Plaintiff). Plaintiff asserts that the policy contains "no criteria . . . for deciding whether or not to grant an inmate's request for a 'Special Visit.'" Id. Plaintiff names Defendants Mr. Jones, Taylor, and Choate in count nine.[4] Defendant Mr. Jones moves for summary judgment with respect to the claims against him in count nine.

In Overton v. Bazzetta, 539 U.S. 126 (2003), the Supreme Court addressed a challenge by prisoners to restrictions limiting visitations for certain inmates in the Michigan state prison system. Id. at 129-130. Michigan's policy banned visits between prisoners and (1) children as to whom the prisoner's parental rights had been terminated, (2) minors who were not the prisoner's children, stepchildren, grandchildren, or siblings, (3) former inmates,

_____

[4]Plaintiff does not name Defendant Morton or include any allegations concerning Defendant Morton in this count.

and (4) visitors except attorneys and members of the clergy for inmates with multiple substance-abuse violations. Employing the well-established, four-factor standard set out in Turner v. Safley, 482 U.S. 78, 89 (1987), for analyzing prisoners' constitutional challenges to a policy, the Court concluded that Michigan's policy bore a rational relation to legitimate penological interests, including internal security, protecting children from harm, maintaining prison security and preventing future crimes, and deterring the use of drugs and alcohol within the prisons. Overton, 539 U.S. at 132-134.

Because "[m]any of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner" and "freedom of association is among the rights least compatible with incarceration," id. at 131, "the Constitution allows prison officials to impose reasonable restrictions upon visitation." Wirsching v. Colo., 360 F.3d 1191, 1198 (10th Cir. 2004). When a prison regulation, like the visitation policy at issue herein, is challenged on constitutional grounds, the burden "is not on the State to prove the validity of the prison regulations but on the prisoner to disprove it." Overton, 539 U.S. at 132.

DOC Policy No. OP-030118 provides that "[v]isitation is a privilege, not a right" and expressly provides that inmates classified as Level 1 are allowed "1 hour non-contact [visitation] per week with individuals on offender's approved visiting list." Special Report 1, Ex. 8, at 6 (DOC Policy No. OP-030118(1)(D)). The policy provides for "special visits" for persons who have traveled long distances, visits to hospitalized offenders, visits in disciplinary status, and other special circumstances, with the "length and conditions of all special visits [to] be determined by the facility head." Special Report 1, Ex. 8, at 12 (DOC

Policy No. OP-030118(III)(D)).  DOC inmates may be classified as Level I when they have committed a misconduct or they have "fail[ed] to address a deficiency (i.e., failure to maintain personal hygiene or living area, refusal or failure of a program, in lieu of a misconduct)."  Special Report I, Ex. 7, at 3 (DOC Policy No. OP-060107(A)(2)).

Plaintiff admits that he was classified as Level 1 at the time his family members came to visit him on March 26, 2010, and there is no dispute that Plaintiff's family members were allowed a non-contact visit with Plaintiff on that date.  Plaintiff has not demonstrated that the DOC's visitation policy lacks a "rational relation to legitimate penological interests." Turner, 482 U.S. at 89.  As the Supreme Court recognized in Overton, "[w]ithdrawing visitation privileges is a proper and even necessary management technique to induce compliance with the rules of inmate behavior . . . ." Overton, 539 U.S. at 134.  Because Plaintiff was classified as Level I, his visitation privileges were reasonably restricted to non-contact visits pursuant to DOC policy.  There is no evidence or allegation that the restriction on Plaintiff's visitation privileges was permanent.  The fact that Oklahoma restricts visitation privileges to non-contact visits while an inmate is classified as Level I as a means of inducing compliance with institutional rules "is not a dramatic departure from accepted standards for conditions of confinement." Id. at 136-137 (finding Michigan's policy did not violate the Eighth Amendment but noting that "[i]f the withdrawal of all visitation privileges were permanent or if it were applied in an arbitrary manner to a particular inmate, the case would present different considerations").

Plaintiff appears to be challenging the policy's lack of guidance for the exercise of

prison officials' discretion in considering inmates' requests for "special visits." However, the policy need not guide the discretion of prison officials with respect to the granting of "special visits" in order to pass constitutional muster. The Supreme Court has recognized many times that "substantial deference [must be accorded] to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." Id. at 132 (citing cases).

Plaintiff asserts that Defendants Taylor and Choate acted with a biased or a retaliatory motive in denying his request for a "special visit." A prisoner alleging retaliation for exercising First Amendment rights must show that a retaliatory motive was the but-for cause of the challenged action. Peterson v. S hanks, 149 F.3d 1140, 1144 (10th Cir. 1998). No inference of retaliatory or biased motive has been shown merely because Plaintiff sued CCF officials the previous year or submitted grievances against CCF officials at various times. See Strope v. Cummings, No. 09-3306, 2010 WL 2294524, * 4 (10th Cir. June 9, 2010)(unpublished op.)("While [prisoner] undeniably engaged in protected activity - he has pursued a plethora of prison grievances and lawsuits over the years - that alone does not establish the requisite causal connection for his retaliation claim. If it did, litigious prisoners could claim retaliation over every perceived slight and resist summary judgment simply by pointing to their litigiousness."). Plaintiff speculates, but provides no evidence, that other inmates who were classified as Level 1 were granted "special visits." Plaintiff has not demonstrated a material issue of fact exists with respect to the issue of whether any

Defendant acted arbitrarily or in retaliation for Plaintiff's exercise of his right of access to the courts by exercising their discretion to deny Plaintiff's request for a "special visit" with out-of-state family members, and Defendant Mr. Jones is entitled to summary judgment concerning this claim.

## VI. Count Ten - DOC Defendants

In count ten, Plaintiff asserts that "Defendants Justin Jones, Debbie Morton, Taylor, Middleton, and Kathy Jones have perverted and abused the grievance policy and procedure, in violation of the 1st, 8th, and 14th Amendments." Second Amended Complaint, at 16 (designated as page 18 by Plaintiff). Defendants Mr. Jones and Morton have moved for summary judgment with respect to the Plaintiff's claims against them in count ten. "Individual liability under § 1983 must be based on personal involvement in the alleged constitutional violation." Foote v. Spiegel, 118 F.3d 1416, 1423 (10th Cir. 1997). "Supervisory status alone does not create § 1983 liability." Gallagher v. Shelton, 587 F.3d 1063, 1069 (10th Cir. 2009). The "denial of a grievance, by itself without any connection to the violation of constitutional rights alleged by plaintiff, does not establish personal participation under § 1983." Id. As support for his claim of a constitutional deprivation, Plaintiff simply refers to several of his grievances and to Warden Taylor's correspondence to Plaintiff in which Warden Taylor advised Plaintiff he was being placed on grievance restriction. Plaintiff contends that Defendants Mr. Jones, Morton, Taylor, Middleton, and Ms. Jones "engaged in a policy and practice of attempting to prevent Plaintiff and other inmates from exhausting their administrative remedies to stop them from filing lawsuits."

Second Amended Complaint, at 16 (designated as page 18 by Plaintiff). He alleges that his "numerous grievances and grievance appeals" were returned to him "unanswered" with "pretextual excuses" for the reviewing authorities' failure to consider the merits of the grievances. Plaintiff's only allegations in count ten relate to the denial of his grievances or the return of those grievance to Plaintiff for procedural deficiencies. Because Plaintiff has not sufficiently demonstrated a connection between these Defendants' personal participation and any alleged constitutional violation, the DOC Defendants' Motion for Summary Judgment concerning count ten should be granted.

VII. Count Thirteen - Defendant Jones

In count thirteen, Plaintiff asserts that "Defendants Justin Jones, Taylor, and Middleton have denied Plaintiff a safe environment, due to chronic shortage of staff for financial reasons, in violation of the 8th Amendment." Second Amended Complaint, at 21 (designated as page 23 by Plaintiff). Defendant Mr. Jones moves for summary judgment with respect to Plaintiff's claim against him in count thirteen.[5]

The analysis of Plaintiff's Eighth Amendment claim requires the Court to determine whether prison officials acted with deliberate indifference to Plaintiff's safety needs. Hope v. Pelzer, 536 U.S. 730, 737-738 (2002); Hudson v. McMilian, 503 U.S. 1, 8 (1992). "First, the deprivation alleged must be, objectively, 'sufficiently serious.'" Farmer v. Brennan, 511 U.S. 825, 834 (1994)(quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). "For a claim ...

---

[5]Plaintiff does not name Defendant Morton or include any allegations concerning Defendant Morton in this count.

based on a failure to prevent harm, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm." Id. Secondly, the prison official must have a "sufficiently culpable state of mind." Wilson, 501 U.S. at 297. "In prison-conditions cases that state of mind is one of 'deliberate indifference' to inmate health or safety." Farmer 511 U.S. at 834. If the risk of harm is obvious, the existence of the necessary subjective state of mind may be inferred. Hope, 536 U.S. at 738 (citing Farmer, 511 U.S. at 842).

As support for his Eighth Amendment claim, Plaintiff alleges the following:

> On 11/21/09 a large scale prison gang fight erupted all over the facility. Many inmates were injured and taken to the Cushing, OK Hospital. The facility was put on total lockdown. Since that date, the facility has remained on either total lockdown or modified lockdown. As the facility has been eventually brought back to 'modified lockdown' other incidents of violence have occurred, most notably on 02/25/10 and 04/08/10.

Second Amended Complaint, at 21 (designated as page 23 by Plaintiff). No other facts are presented by Plaintiff with respect to the actual conditions of Plaintiff's confinement at CCF. Even assuming that the conditions at CCF on or after November 21, 2009, the date Plaintiff alleges the "gang fight" occurred, created a substantial risk of serious harm, Plaintiff has provided no facts creating an inference that any prison official knew of and disregarded a substantial risk of serious harm to Plaintiff's safety. Plaintiff's allegations are conclusory and indicate CCF officials took action following the "gang fight" by instituting "lockdown" procedures designed to prevent further substantial risks of harm to inmates. Consequently, Defendant Mr. Jones' Motion for Summary Judgment as to count thirteen should be granted.

VIII. <u>Count One - Defendant Jester</u>

Plaintiff was issued a summons for Defendant Jester which directed that service be made on Defendant Jester at CCF. However, the summons was returned unexecuted on June 25, 2010, with the explanation that Defendant Jester "does not work for facility anymore." (Doc. # 36). Plaintiff has specifically named Defendant Jester only in count one of the Second Amended Complaint. In count one, Plaintiff contends that Defendant Jester interfered with Plaintiff's First, Sixth, and Fourteenth Amendment rights to send and receive legal mail. Second Amended Complaint, at 4. Specifically, Plaintiff contends that (1) "legal mail sent to Plaintiff by the U.S. District Court arriving at CCF on 07/06/09 was opened, read, and confiscated by [CCF] Mail Clerk Linda Jester;" (2) "mail sent to Plaintiff by the U.S. Supreme Court arriving on 09/18/09 was not processed by Jester as legal mail per prison policy;" (3) a "letter sent to Plaintiff by attorney Debbie Maddox of the Oklahoma Bar Association arriving on 09/15/09 was not processed by Jester as legal mail per prison policy;" (4) "[o]n 09/25/09 Plaintiff was not allowed to go to the CCF mail window at the regularly scheduled time to send out a heavy package of legal mail . . . due to a new but not yet announced local policy requiring advance written permission to come to the mail window which is overly restrictive and caused undue delay in sending out legal mail;" and (5) "legal mail brought to CCF for Plaintiff by attorney Margie Wester on 12/03/09 was delayed by 2½ days for no valid reason." Second Amended Complaint, at 6.

With respect to the first alleged incident, Plaintiff refers to his Grievance No. 09-126, a copy of which he attached to the pleading, and to specific exhibits attached to his Second

Amended Complaint.  One of these attached exhibits is a Request to Staff form directed to Defendant Jester by Plaintiff dated July 6, 2009, in which Plaintiff complains that "today, July 6, 2009 when I came to pick up legal mail sent to me by the U.S. District Court, you would not let me have it.  You showed me the top of a court document listing Clint Barger's name and said that is why you would not let me have it.  As you know, he is not currently an inmate.  He discharged his sentence." Second Amended Complaint, Exhibit pt. 1, at 1.  The response by Linda Jester states the Request to Staff was "[u]nanswered because of pending litigation." Id.

In Thornburgh v. Abbott, 490 U.S. 401 (1989), the Supreme Court "acknowledged that prison officials were better equipped than the judiciary to deal with the security implications of interactions between prisoners and the outside world, and emphasized that broad deference should be accorded their efforts." Smith v. Maschner. 899 F.2d 940, 944 (10th Cir. 1990).  Plaintiff's exhibits attached to his Second Amended Complaint reflect that the incoming mail which was censored on July 6, 2009, involved another inmate or former inmate.  Plaintiff has no constitutionally protected right to receive another individual's mail.  Consequently, his claim of a constitutional deprivation related to the piece of mail has no arguable basis in fact or law and is frivolous.

With respect to the second, third, and fifth alleged incidents, Plaintiff alleges only negligence by Defendant Jester in failing to follow prison policy.  Plaintiff does not allege that Defendant Jester's actions interfered with his communication with his attorney or with the courts or that Defendant Jester's actions resulted from a prison policy of interfering with

inmates' receipt of mail. These isolated incidents concerning Plaintiff's receipt of incoming mail do not state a claim of a constitutional deprivation. In the fourth alleged incident, Plaintiff alleges only a short delay in his ability to send "legal" mail from CCF. This allegation of a constitutional deprivation has no arguable basis in law or fact and is frivolous. Consequently, Plaintiff's claims against Defendant Jester should be dismissed as frivolous or for failure to state a claim for relief pursuant to 28 U.S.C. § 1915(e)(2)(B).

RECOMMENDATION

Based on the foregoing findings, it is recommended that the CCF Defendants' Motion to Dismiss (Doc. # 57) be GRANTED on the basis that Plaintiff failed to exhaust available administrative remedies concerning Plaintiff's claims against them in counts one through thirteen of the Second Amended Complaint, that the DOC Defendants' Motion to Dismiss (Doc. # 61) be GRANTED concerning all of Plaintiff's claims brought against them in their official capacities, that the DOC Defendants' Motion to Dismiss (Doc. # 61) be GRANTED as to Plaintiff's claims against them individually in counts one through eight, and that the DOC Defendants' Motion for Summary Judgment (Doc. # 61) be GRANTED concerning Plaintiff's claims against Defendant Mr. Jones individually in count nine, against Defendants Mr. Jones and Morton individually in count ten, and against Defendant Mr. Jones individually in count thirteen. It is further recommended that Plaintiff's claims in counts eleven and twelve in the Second Amended Complaint as to all Defendants and Plaintiff's claims in count one as to Defendant Jester be DISMISSED as frivolous or for failure to state

a claim for relief pursuant to 28 U.S.C. § 1915(e)(2)(B).  Further, it is recommended that Plaintiff's Cross-Motions for Summary Judgment (Docs. # 77, 82) be DENIED.  Also, Plaintiff's Motions (Docs. # 47, 78, 79, 89, 90, 93, and 94) are DENIED as moot.

Plaintiff is advised of his right to file an objection to this Supplemental Report and Recommendation with the Clerk of this Court by ____November 29th_____, 2010, in accordance with 28 U.S.C. § 636.  The failure to timely object to this Supplemental Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Supplemental Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this __8th___ day of __November_____, 2010.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE